# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ANTONIO B., | ) | |
| | ) | |
|          Plaintiff, | ) | |
|     v. | ) | 1:23CV38 |
| | ) | |
| MARTIN J. O'MALLEY, | ) | |
| Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| | ) | |
|          Defendant. | ) | |

## O-R-D-E-R[1]

Plaintiff Antonio B. brought this action to obtain review of a final decision of the Commissioner of Social Security denying his claim for supplemental security income. The Court has before it the certified administrative record, Plaintiff's motion for judgment, and the Commissioner's dispositive brief.[2]

### I. PROCEDURAL HISTORY

In 2020, Plaintiff filed an application for supplemental security income alleging a disability onset date of April 1, 2020. (Tr. 219-25.) The application was denied initially and

---

[1] By Order of Reference, this matter was referred to the Undersigned to conduct all proceedings in this case pursuant 28 U.S.C. § 636(c). (Docket Entry 10.) Additionally, on December 20, 2023, Martin J. O'Malley was sworn in as Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. O'Malley is substituted for his predecessor, Kilolo Kijakazi, as the proper defendant in this action pursuant to Federal Rule of Civil Procedure 25(d).

[2] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer. (Docket Entry 4.)

upon reconsideration. (Tr. 117-21, 130-34.) After a hearing, the Administrative Law Judge ("ALJ") determined on May 4, 2022, that Plaintiff was not disabled under the Act. (Tr. 22-89.) The Appeals Council denied a request for review, making the ALJ's decision the final decision for purposes of review. (Tr. 8-12.)

## II. STANDARD FOR REVIEW

The scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The issue before the Court is not whether Plaintiff is disabled but whether the finding that he is not disabled is supported by substantial evidence and based upon a correct application of the relevant law. *Id.*

## III. THE ALJ'S DECISION

The ALJ followed the well-established sequential analysis to ascertain whether the claimant is disabled.[3] *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999).

---

[3] "The Commissioner uses a five-step process to evaluate disability claims." *Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012) (citing 20 C.F.R. § 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her [or his] past relevant work; and (5) if not, could perform any other work in the national economy." *Id.* A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability

2

The ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since September 15, 2020, which was the application date. (Tr. 25.) The ALJ found the following severe impairments at step two: "Degenerative Disc Disease of the Thoracic Spine and Lumbar Spine." (Tr. 25.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1. (Tr. 31.)

The ALJ next set forth Plaintiff's Residual Functional Capacity ("RFC") and determined that he could perform a range of medium work, except:

> The claimant can sit for six hours out of an eight-hour day; He can stand and/or walk for six hours out of an eight-hour day; He can lift and carry fifty pounds occasionally and twenty-five pounds frequently, and can push and pull in accordance with those lifting and carrying limitations; He can occasionally climb ladders, scaffolds and ropes; He can frequently climb ramps and stairs, and can frequently stoop.

(Tr. 31.) At the fourth step, the ALJ determined that Plaintiff had no past relevant work. (Tr. 40.) Last, at step five, the ALJ concluded that there were jobs in the national economy that Plaintiff could perform. (Tr. 40.)

---

designation and ends the inquiry. *Id.* at 473. "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the Secretary to produce evidence that other jobs exist in the national economy that the claimant can perform considering his age, education, and work experience." *Hunter*, 993 F.2d at 35 (internal citations omitted).

3

Case 1:23-cv-00038-JLW    Document 11    Filed 01/09/24    Page 3 of 17

## IV. ISSUES AND ANALYSIS

Plaintiff's sole objection is that "The Commissioner erred as a matter of law by failing to account for the Plaintiff's mild mental limitations in the RFC." (Docket Entry 8 at 7.) As explained below, this argument warrants no relief because the ALJ gave good reasons, supported by substantial evidence and susceptible to judicial review, for not including any mental limitations in Plaintiff's RFC.

At step two of the sequential evaluation process, the claimant bears the burden of demonstrating a severe, medically determinable impairment that has lasted or is expected to last for a continuous period of at least twelve months. 20 C.F.R. § 416.909; *Shrecengost v. Colvin*, No. 14CV506, 2015 WL 5126117, at *3 (W.D.N.Y. Sept. 1, 2015) ("[The p]laintiff bears the burden of establishing a severe impairment at step two by furnishing medical and other evidence of the existence thereof as the Commissioner may require, and will not be considered disabled if such evidence is not provided."). The Act describes "a physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A physical or mental impairment must be established by objective medical evidence from an acceptable medical source. 20 C.F.R. § 416.921. A statement of symptoms, diagnosis, or medical opinion is not sufficient to establish the existence of an impairment. *Id.* A "[l]icensed physician" or "[l]icensed psychologist" is an "acceptable medical source." 20 C.F.R. § 416.902(a).

An impairment is "severe" unless it "has such a *minimal effect* on the individual that it

4

would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984); *see also* 20 C.F.R. § 416.922(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."); *Brookover v. Saul*, No. 2:20-CV-24-M, 2021 WL 4147075, at *4 (E.D.N.C. June 25, 2021). The "severity standard is a slight one." *Stemple v. Astrue*, 475 F. Supp. 2d 527, 536 (D. Md. 2007). When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 416.920a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. *Id.* § 416.920a(c)(3). The ALJ is required to incorporate into the written decision pertinent findings and conclusions based on the "special technique." *Id.* § 416.920a(e)(3).

Additionally, "an error at step two in failing to properly consider whether an impairment is severe may be harmless where the ALJ considers that impairment in subsequent steps." *Jones v. Astrue*, No. 5:07-CV-452-FL, 2009 WL 455414, at *2 (E.D.N.C. Feb. 23, 2009) (finding no reversible error where an ALJ does not consider whether an impairment is severe at step two of the sequential evaluation provided the ALJ considered that impairment in subsequent steps) (citations omitted); *see also Shinseki v. Sanders*, 556 U.S. 396, 407 (2009); *Garner v. Astrue*, 436 Fed. App'x 224, 225, n* (4th Cir. 2011). However, provided that the claimant has at least one severe impairment, the ALJ must consider the combined effect of all of the

5

claimant's impairments, irrespective of whether they are severe, in determining the claimant's RFC. 20 C.F.R. § 416.945(e); *Walker v. Bowen*, 889 F.2d 47, 49-50 (4th Cir. 1989).

Non-severe impairments do not require limitations in the RFC if there is substantial evidence and an adequate explanation for the omission. *See, e.g.*, *Paris F. v. Comm'r of Soc. Sec.*, No. 20-CV-6724S, 2022 WL 2092904, at *4 (W.D.N.Y. June 10, 2022); *Smith v. Colvin*, No. CIV-13-617-F, 2014 WL 4384705, at *2 (W.D. Okla. Sept. 3, 2014); *Krosse v. Colvin*, No. 13-CV-270-PJC, 2014 WL 1342970, at *7 (N.D. Okla. Apr. 3, 2014); *Cooks v. Astrue*, No. 1:10-CV-02714-TWT, 2012 WL 567189, *n.12 (N.D. Ga. Jan. 24, 2012) (collecting cases).

Here, the ALJ's decision not to include mental limitations in the RFC determination was legally correct, supported by substantial evidence, and is susceptible to judicial review. More specifically, at step two, the ALJ acknowledged that Plaintiff had been diagnosed with an anxiety disorder and an adjustment disorder with anxiety. (Tr. 477, 702, 717.) However, in evaluating Plaintiff's mental impairments at step two, the ALJ fully discussed the mental health evidence in finding these impairments non-severe. (Tr. 28-31.)

Initially, the ALJ recognized Plaintiff's subjective statements, noting that Plaintiff alleged daily anxiety and panic attacks with difficulty concentrating and motivating. (Tr. 28, 72-74.) However, the ALJ explained that the evidence suggested that his symptoms were not as severe or persistent as he claimed during the relevant period, and that they caused no more than minimal symptoms or limitations. (Tr. 28.) In making this finding, the ALJ noted that Plaintiff underwent very little mental health treatment during the relevant period. (Tr. 28.) The ALJ recognized that Plaintiff met with Ms. Lisa Loeffel, LCMHC at Best Day Psychiatry and

6

Counseling once in October 2020 (Tr. 28, 701-03), but never followed up with Ms. Loeffel or any other psychotherapist or mental health specialist in the subsequent months (Tr. 28). Rather, Plaintiff specifically declined a referral to psychiatry in April 2021 (Tr. 28, 757) and the ALJ correctly noted that the record documented no effort by Plaintiff to seek any other mental health treatment since his application date (Tr. 28).

The ALJ further explained that, during that singular mental health appointment, examination findings were benign. (Tr. 28, 702.) Specifically, Plaintiff had satisfactory self-care and hygiene; was appropriately dressed; was interactive with the examiner; had appropriate eye contact; had normal and coherent speech with nice flow, proper rhythm, normal productivity, and normal tone; displayed a euthymic mood and congruent affect; had goal-directed thoughts; showed no hallucinatory behavior or suicidal or homicidal ideation, plan, or intent; had no obsessive thoughts, delusions, or illusions; was oriented to time, person, place, and situation; and had intellectual insight, good social judgment, and good attention. (Tr. 28, 702.)

And, as the ALJ recognized, other treatment providers also generally observed normal mental status findings. (Tr. 28; *see*, *e.g.*, Tr. 656, 660, 664, 676, 671, 756, 761, 775.) Thus, the ALJ supported his non-severity finding with the limited mental health treatment and relatively benign findings by his treating providers. (Tr. 28.)

Additionally, when evaluating Plaintiff's mental impairments at step two, the ALJ discussed the July 2021 findings of psychological consultative examiner Dr. Ernest Akpaka. (Tr. 28, 716-17.) The ALJ noted that, during this examination, Plaintiff was unable to complete serial sevens or serial fours (backwards) but could accurately recall a series of four digits

7

forward on immediate retention and recall. (Tr. 28, 716.) The ALJ also considered Dr. Akpaka's observations that Plaintiff was alert, responsive, polite, cooperative, and well groomed, with normal speech; coherent, logical and goal-directed thought processes; and low-average intellectual functioning. (Tr. 28, 715-17.)

The ALJ also reviewed Plaintiff's ability to complete other tasks, such as demonstrating his immediate recall abilities; providing information about past events on recent and remote memory testing; naming several cities and identifying past presidents on fund of information testing; solving simple arithmetic problems; identifying similarities between pairs of objects on abstract thinking test; and answering various questions administered to test his judgment. (Tr. 28-29, 716-17.) The ALJ further noted that, at this examination, Plaintiff reported that he continues to socialize with family, perform self-care activities, and read the Bible, an activity which the ALJ noted tends to require sustained concentration. (Tr. 29, 716.)

After reviewing this evidence, the ALJ determined that Plaintiff had no limitation understanding, remembering, or applying information; a mild limitation interacting with others; a mild limitation concentrating, persisting, or maintaining pace; and a mild limitation adapting or managing oneself. (Tr. 29.) As such, the ALJ found that Plaintiff's mental impairments were non-severe. (Tr. 29.) *See* 20 C.F.R. § 416.920a(d)(1) (an ALJ will generally find a claimant's mental impairment to be non-severe if the four areas of functioning are rated as "none" or "mild").

At step two, the ALJ also considered the medical opinions and prior administrative medical findings that addressed Plaintiff's mental functioning. (Tr. 29-31, 93, 102, 717.) The

8

ALJ agreed with the findings of the state agency expert psychologists, who assessed no mental RFC limitations after concluding that Plaintiff's mental impairments were non-severe, with no limitation understanding, remembering, or applying information; and mild limitations interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself. (Tr. 29-30, 93, 96, 102, 105.)

The ALJ explained their findings were persuasive, as these mental health professionals reviewed the records and identified supporting findings for their opinions. (Tr. 29-31, 93, 102.) The ALJ considered that, for example, Dr. Jennifer Fulmer reviewed a recent mental status examination, which was normal (Tr. 29, 94), and Dr. Jacquelyn Harrison noted that Plaintiff exhibited low average intelligence at the consultative examination (Tr. 29, 102). The ALJ also explained that Dr. Fulmer's and Dr. Harrison's findings were consistent with the relevant evidence. (Tr. 29.) For example, the ALJ noted that aside from Plaintiff's visit with Ms. Loeffel in October 2020, the record showed no efforts to seek treatment from any mental health specialists during the relevant period since his application date. (Tr. 29.) Rather, Plaintiff declined an offer by his primary care physician for a referral to psychiatry. (Tr. 29, 757.)

The ALJ also explained that the state agency findings were consistent with Ms. Loeffel's examination, which showed benign findings, as discussed in more detail above. (Tr. 29-30, 702.) Additionally, the ALJ determined that these findings were consistent with the examination conducted by Dr. Akpaka, who noted that despite some issues with serials sevens and recalling digits backwards, Plaintiff otherwise had numerous other normal findings: he was alert, responsive, polite, cooperative, and well-groomed; had normal speech, coherent,

9

logical and goal-directed thought processes, and low-average intellectual functioning; and was able to complete numerous other tasks on testing of recall and memory, fund of information, abstract thinking, and judgment. (Tr. 30, 715-17.) The ALJ further found the state agency findings to be consistent with Plaintiff's activities as reported to the consultative examiner: he socializes with family, performs self-care, and reads the Bible, which the ALJ noted tends to require sustained concentration. (Tr. 30, 716.)

At step two, the ALJ also assessed the medical opinion of the consultative examiner but explained why he found it to be less persuasive. (Tr. 30-31.) Initially, the ALJ summarized Dr. Akpaka's opinion that Plaintiff seemed capable of retaining and following instructions, and sustaining adequate attention to perform simple, repetitive tasks; would likely have trouble relating to others, including supervisors and coworkers; may have trouble tolerating the stress and pressures associated with day-to-day regular work activity; and had symptoms that would likely combine to decrease his frustration tolerance and impede his ability to perform tasks requiring sustained concentration and persistence. (Tr. 30, 717.)

However, the ALJ disagreed with this opinion and declined to adopt these limitations for a number of reasons. (Tr. 30-31.) First, the ALJ noted that Dr. Akpaka provided limited support for his opinion, outside Plaintiff's complaints of anxiety, irritability, difficulty sleeping, and difficulty concentrating, and the findings of difficulties with serial sevens and recalling four digits backwards. (Tr. 30, 716-17.) Second, the ALJ explained that Dr. Akpaka's opinion was vague, as it did not quantify the extent to which Plaintiff's impairments might impact his

10

ability to relate to others, tolerate stress and pressures of day-to-day work activities, or impede his ability to perform tasks requiring sustained concentration and persistence. (Tr. 30, 717.)

And finally, the ALJ explained that Dr. Akpaka's opinion was overly restrictive in light of the record. (Tr. 30.) More specifically, the ALJ noted that Plaintiff sought no mental health treatment aside from his one appointment with Ms. Loeffel, which suggested that his mental impairments caused no more than minimal symptoms and limitations. (Tr. 30.) Additionally, the ALJ noted that Dr. Akpaka himself noted that Plaintiff was alert, responsive, polite, cooperative, and well-groomed; had normal speech, coherent, logical and goal-directed thought processes, and low-average intellectual functioning; and was able to complete numerous other tasks on testing of recall and memory, fund of information, abstract thinking, and judgment. (Tr. 30-31, 715-17.) And, the ALJ further found Dr. Akpaka's limitations to be inconsistent with Plaintiff's stated activities, which included socializing with family, performing self-care, and reading the Bible, which the ALJ noted tends to require sustained concentration. (Tr. 30, 716.) Thus, the ALJ disagreed that any limitations were warranted based on Dr. Akpaka's opinion. (Tr. 30-31.)

Ultimately, at step two, the ALJ explained why Plaintiff's mental impairments were non-severe (Tr. 28-30), and further confirmed that "[t]he undersigned considered all of the claimant's medically determinable impairments, including those that are not severe, when assessing the claimant's residual functional capacity" (Tr. 27). Plaintiff does not challenge the ALJ's finding that his mental impairments were non-severe.

11

The ALJ's statement that he considered all of Plaintiff's impairments in the RFC is borne out by his discussion later in the decision. When assessing Plaintiff's RFC, the ALJ again addressed Plaintiff's mental functioning, and explained that functional limitations were not warranted in the RFC. More specifically, the ALJ explained that "[f]urther restrictions are neither warranted nor supported," and that

> [t]here is no support for th[e] testimony that he experiences 'constant' anxiety and panic attacks or that his concentration and attention are impaired. [Plaintiff] simply has not reported this level of debility to any treating or examining provider, nor have examinations resulted in findings consistent with the extreme level of debility he attempted to convey. For example, the most recent visits seen in Exhibit 13F in no way indicate the level of debility to which he testified.

(Tr. 36; *see*, *e.g.*, Tr. 757, 761, 775, 781 (noting generally normal mental status findings).)

The ALJ thus provided additional articulation, beyond the reasoning discussed at step two, for why mental limitations were unwarranted in the RFC. Read as a whole, the ALJ's decision to omit mental limitations from the RFC is legally correct, supported by substantial evidence, and subject to meaningful judicial review. *See Smith v. Astrue*, 457 Fed. App'x 326, 328 (4th Cir. 2011) (endorsing "[r]eading the ALJ's decision as a whole," rather than looking at one portion of the decision in isolation); *McCartney v. Apfel*, 28 Fed. App'x 277, 279 (4th Cir. 2002) ("[T]he ALJ need only review medical evidence once in his decision."). As explained earlier, non-severe impairments do not require limitations in the RFC if, as here, there is substantial evidence and an adequate explanation for the omission. *See, e.g.*, *Paris F.*, 2022 WL 2092904, at *4; *Smith*, 2014 WL 4384705, at *2; *Krosse*, 2014 WL 1342970, at *7; *Cooks v. Astrue*, 2012 WL 567189, *n.12.

12

It is also notable that the jobs cited by the VE, and adopted by the ALJ, limited the requirements of Plaintiff's mental functioning. (Tr. 40-41, 79.) Indeed, the jobs of laundry worker, sandwich maker, and linen room attendant are all unskilled jobs, with a specific vocational preparation ("SVP") level of 2[4] requiring only a short demonstration of up to one month to learn. *See* Laundry worker, Dictionary of Occupational Titles ("DOT") 361.685-018, 1991 WL 672987; Sandwich maker, DOT 317.664-010, 1991 WL 672749; Linen room attendant, DOT 222.387-030, 1991 WL 672098. And, as further explained in the regulations, unskilled work, such as the jobs above, "needs little or no judgment to do simple duties that can be learned on the job in a short period of time." *See* 20 C.F.R. § 416.968(a). Nor do the laundry worker or linen-room attendant positions require significant taking instructions or helping other people. *See* Laundry worker, DOT 361.685-018, 1991 WL 672987; Linen room attendant, DOT 222.387-030, 1991 WL 672098. Consequently, these jobs limit social interactions considerably as well.

Despite the ALJ's thorough analysis, Plaintiff challenges his decision on several grounds, but none have merit. (Docket Entry 8 at 7-10.) First, Plaintiff cites a number of cases to argue that the ALJ was either required to include a limitation in the RFC to account for his mild mental limitations or explain why they were not included. (*Id.* at 7-8.) However, Plaintiff does not explain how any of these cases are applicable to the specific facts presented here, where the ALJ gave many good reasons supported by substantial evidence for declining to

---

[4] As explained in Social Security Ruling 00-4p, using the skill definitions in the regulations, unskilled work corresponds to an SVP of 1 or 2. 2000 WL 1898704, at *4.

13

adopt mental limitations in the RFC. As shown above, the ALJ not only discussed Plaintiff's mental impairments when assessing the RFC, but also included a lengthy discussion of the evidence, including the medical opinions and prior administrative medical findings, in earlier parts of the decision. Read as a whole, the ALJ's decision is far different than the ones cited by Plaintiff in his brief. *See Smith*, 457 Fed. App'x at 328; *McCartney*, 28 Fed. App'x at 279.

Second, Plaintiff argues that the ALJ should have assessed functional limitations in the RFC because Plaintiff was unable to recall four digits backwards on testing, was unable to complete serial seven subtractions, and was found to have low-average intelligence. (Docket Entry 8 at 8-10.) However, the ALJ clearly considered these facts when determining that Plaintiff had at most only mild limitations in the Paragraph "B" criteria and finding a non-severe mental impairment. (Tr. 27-30, 716-17.)

And, as discussed at length above, the ALJ not only considered these facts, but also considered the rest of the evidence, including the medical opinions and prior administrative medical findings, in explaining why limitations were unwarranted. Reading the decision as a whole, the Court can easily trace the ALJ's reasoning here, where he considered this evidence, but ultimately found that the record lacked support for Plaintiff's testimony that he had constant anxiety and panic attacks or that his concentration and attention were impaired, as he did not report this level of debility to his providers and the examinations did not convey the extreme level of limitation he alleged. (Tr. 36, citing Exhibit 13F.) In any event, the ALJ did account for some level of limitation by finding, at step five, that he could perform the unskilled jobs the VE cited. (Tr. 40-41.)

Second, Plaintiff also disregards the Court's limited role under substantial evidence review, and selectively highlights evidence that he claims warrants greater limitations. (Docket Entry 8 at 8-10.) However, as noted at the outset of this Order, the Court's job here is not to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig*, 76 F.3d at 589. Because the ALJ's decision to omit mental limitations from the RFC is legally correct, well-supported, and susceptible to judicial review, Plaintiff's objections fail.

Third, Plaintiff argues that the ALJ erred in evaluating his mental functioning, citing to what he claims are limitations assessed by state agency psychologist Dr. Harrison. (Docket Entry 8 at 9.) However, Plaintiff misreads Dr. Harrison's statement. (Tr. 102.) After assessing the Paragraph "B" criteria, Dr. Harrison summarizes the evidence on reconsideration, noting the consultative examination findings and reviewing Plaintiff's activities of daily living and the completed function report. (Tr. 102.) In summarizing the function report, Dr. Harrison noted that Plaintiff alleges "[d]ifficulty w/completing tasks, concentrating, and getting along with others. Does not handle stress or change well." (Tr. 102, 295-96.) This statement is a summary of Plaintiff's alleged limitations in his abilities per his function report (Tr. 102-03, 295-96); they are not part of Dr. Harrison's prior administrative medical findings. Dr. Harrison's ultimate finding was that Plaintiff had some limitations due to his impairments, but that they appear mild in nature, consistent with the mild limitations in the Paragraph "B" criteria that she assessed. (Tr. 102.) In fact, Dr. Harrison did not opine that Plaintiff had any specific mental

15

RFC limitations stemming from the mild Paragraph "B" criteria findings. (Tr. 102.) Therefore, Plaintiff cannot show error on this basis.

Ultimately, the specific facts of this case support the ALJ's finding that Plaintiff's mental impairment was non-severe and did not result in mental RFC limitations. As discussed above, the ALJ fully evaluated Plaintiff's mental impairments throughout the sequential evaluation process. The ALJ reviewed Plaintiff's singular mental health appointment; noted that he did not return for further specialized treatment; summarized the consultative examiner's findings; explained why he found the prior administrative medical findings relatively more persuasive than the consultative examiner's medical opinion; revisited Plaintiff's mental impairments when evaluating the RFC; and ultimately found that Plaintiff could perform unskilled jobs existing in significant numbers in the national economy. Given the specific set of facts presented, and the ALJ's thorough analysis, the final decision of the Commissioner is affirmed.

## V. CONCLUSION

After careful consideration of the evidence of record, the Court finds that the Commissioner's decision is legally correct, supported by substantial evidence, and susceptible to judicial review. Accordingly, Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 7) is **DENIED** and the final decision of the Commissioner is upheld.

A Judgment dismissing this action will be entered contemporaneously with this Order.

/s/ Joe L. Webster
                                            United States Magistrate Judge

January 9, 2024
Durham, North Carolina